**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**DAVID A. RICHARDSON,**

Plaintiff,

v. Civil Action No. **3:25CV140**

**COMMONWEALTH OF VIRGINIA, *et al.*,**

Defendants.

## MEMORANDUM OPINION

David A. Richardson, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action.[1] By Memorandum Order entered on September 18, 2025, the Court directed Richardson to file a particularized complaint. (ECF No. 11.) After requesting and being granted extensions of time amounting to over five months, Richardson filed his particularized complaint on March 6, 2026. (ECF No. 20.) The matter is before the Court for evaluation of Richardson's compliance with the Court's September 18, 2025, Memorandum Order and pursuant to 28 U.S.C. § 1915A. The bulk of Richardson's claims will be dismissed pursuant to *res judicata*. Those that remain will be dismissed for failure to state a claim, failure to comply with the Court's prior directives, and for the Court's decision not to exercise supplemental jurisdiction over questions of state law.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983.

## I. PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner that (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. §§ 1915A, 1915(e)(2). Frivolous cases are those based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). Courts assess whether a case states a claim under the familiar standard in Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, the Court takes a plaintiff's well-pleaded allegations as true and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), and state a claim that is "plausible on its face," rather than merely "conceivable," *id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). For a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (first citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); and then *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. RELATED CIVIL ACTION, PROCEDURAL HISTORY, AND ALLEGATIONS

In January 2018, Richardson, who suffers from significant vision and hearing problems, filed an action in this Court, alleging that Virginia Department of Corrections ("VDOC") officials violated his rights under the Americans with Disabilities Act ("ADA") and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), among other laws. *See* Particularized Complaint, *Richardson v. Clarke*, No. 3:18CV23 (E.D. Va.) ("*Richardson I*"), ECF No. 42. After years of litigation, on May 8, 2024, the Court dismissed *Richardson I* with prejudice after Richardson and

the defendants in that action entered into a settlement agreement. *See Richardson I*, ECF Nos. 134, 135, 140.[2] Summarizing the settlement agreement, United States Magistrate Judge Mark R. Colombell stated in *Richardson I* that

> [t]he Settlement Agreement required VDOC to provide Richardson with accommodations designed to ensure his meaningful participation in prison programs and services. Among other things, VDOC agreed to provide Richardson additional time to utilize the law library, to schedule American Sign Language [("ASL")] interpreters for all significant communications, to provide him with documents and notices in a specific color and font combination recommended by a vision specialist, and to ensure that medical records, legal documents, and JPay emails were uploaded for Richardson's review in an accessible format and in a timely manner. While many of these provisions were written specifically with Beaumont Correctional Center [("BCC")] in mind, the Settlement Agreement expressly provided that if Plaintiff were transferred to another VDOC facility, "any and all appropriate efforts shall be made by VDOC to provide these or similar disability accommodations at any such facility."

*Richardson I*, ECF No. 158, at 2–3 (internal citations omitted).

Consistent with the settlement agreement's provision stating that Judge Colombell would have exclusive jurisdiction to resolve any disputes between the parties and that his determination would be "conclusive," *see id.* at 2, Richardson in February and March 2025 alerted the Court to VDOC's alleged breaches of the agreement. *See Richardson* I, ECF Nos. 136, 137. In his materials, Richardson alleged that, following his transfer from BCC to State Farm Correctional Center ("SFCC"), VDOC officials had not provided him with "readable requests, memoranda, and facility postings," *Richardson I*, ECF No. 136, at 2, had not permitted him sufficient access to the law library, and had not provided him adequate access to ASL interpreters, *Richardson I*, ECF No. 149, at 8–12. In an affidavit Richardson submitted, he claimed that these alleged breaches of the

[2] For ease of reference, the Court hereafter will refer to the settlement agreement, which is located at ECF No. 140 on the *Richardson I* docket, as the "settlement agreement" or simply the "agreement." Because the settlement agreement was filed under seal in *Richardson I*, the Court has endeavored, whenever possible, not to cite to the document itself. Instead, the Court cites to the portions of the document Richardson and VDOC officials voluntarily reproduced in later submissions in *Richardson I*.

Settlement Agreement had occurred through at least July 2025. *See Richardson I*, ECF No. 149-20, at 7. The Court construed Richardson's letters as a motion to enforce the settlement agreement ("motion to enforce") and directed VDOC officials to respond. *Richardson I*, ECF No. 138.

On October 3, 2025, after considering the parties' submissions, Judge Colombell found that the VDOC "ha[d] not materially breached the Settlement Agreement" and accordingly denied Richardson's motion to enforce. *Richardson I*, ECF No. 158, at 21; *see Richardson I*, ECF No. 159. Summarizing his findings, Judge Colombell stated that VDOC officials had "substantially complied with the Settlement Agreement" and made "appropriate efforts" to replicate at SFCC the accommodations in place at BCC "through a combination of [providing] permissible law library access, regular interpreter scheduling, routine uploads of documents, and the provision of a costly assistive device." *Richardson I*, ECF No. 158, at 20 (citation omitted).

But Richardson's did not limit his efforts to obtain further accommodations to *Richardson I*. Rather, Richardson filed the instant action in February 2025, at roughly the same time he first alerted the Court to the VDOC's alleged breaches of the settlement agreement in *Richardson I*. (*See* ECF No. 1.)[3] In this action, like in *Richardson I*, Richardson complains of the VDOC's failure to accommodate his disabilities, claiming that officials have not provided him appropriate eyeglasses, failed to ensure that documents were uploaded to his law library account, did not provide adequate access to ASL interpreters, and more. (ECF No. 1, at 9–13.) Nevertheless, Richardson asserted in his original complaint that his former action "ha[d] no bearing on the matters [raised in this action]." (ECF No. 1, at 9.)

---

[3] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the Particularized Complaint.

Despite Richardson's assertion that this action is unrelated to *Richardson I*, the Court observed the similarities between the two cases, stating in its September 18, 2025, Memorandum Order that, "in a different case, [Richardson was] moving to set aside an earlier entered settlement agreement on some of the same grounds that he raises in this action," like "not always having an interpreter at medical appointments." (ECF No. 11, at 1.) The Court also found other deficiencies with the complaint, stating as follows:

> In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). Courts must liberally construe *pro se* civil rights complaints in order to address constitutional deprivations. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Plaintiff's Complaint is fifty-eight pages and is rambling and contains information entirely unnecessary to his claims. Thus, the Complaint fails to comply with the requirements in Federal Rule of Civil Procedure 8(a)[] that the statement of his claim or claims must be short and plain. Plaintiff's current allegations also fail to provide each defendant with fair notice of the facts and legal basis upon which his or her liability rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).
>
> Accordingly, Plaintiff is DIRECTED, within thirty (30) days of the date of entry hereof, to particularize his Complaint in conformance with the following directions and in the order set forth below:
>
>> a. At the very top of the particularized pleading, Plaintiff is directed to place the following caption in all capital letters "PARTICULARIZED COMPLAINT FOR CIVIL ACTION NUMBER 3:25CV140."
>>
>> b. The first paragraph of the particularized pleading must contain a list of defendants. The Court will not consider any party a defendant unless they are named in this paragraph.
>>
>> c. Thereafter, in the second paragraph, Plaintiff must set forth legibly, in separately numbered paragraphs, a short statement of the facts giving rise to his claims for relief. Thereafter, in separately captioned sections, Plaintiff must state how each defendant was personally involved in the events he describes.

> *Plaintiff must provide specific dates and must present his facts in order by date.*
>
> d. In the third paragraph, Plaintiff must identify each federal or civil right violated. The Court will only consider rights specifically identified here. Under each section, Plaintiff must list each defendant purportedly liable under that legal theory and explain why he believes each defendant is liable to him. This means Plaintiff must clearly state why he believes that each defendant violated his constitutional rights based on the facts he has provided. For example, if Plaintiff believes that defendants violated his Eighth Amendment rights for more than one reason, he must clearly label each claim separately (*i.e.*, "Claim One (a)" then, "Claim One (b)") and identify exactly which defendants were involved in that claim. Such explanation should reference the specific numbered factual paragraphs in the body of the particularized complaint that support that assertion. The Court will not parse through this section to find claims that are not clearly identified.
>
> e. Finally, Plaintiff must include a prayer for relief.
>
> f. The particularized pleading will supplant the prior complaints and may be no longer than THIRTY (30) pages in length. This means that the Particularized Complaint will REPLACE any earlier complaint so Plaintiff must include any claim or allegation that he wants the Court to consider. The particularized pleading must stand or fall of its own accord. This means that Plaintiff may not reference statements in the prior complaints.
>
> **FAILURE TO COMPLY WITH THE FOREGOING DIRECTIONS WILL RESULT IN DISMISSAL OF THE ACTION.** *See* Fed. R. Civ. P. 41(b).

(ECF No. 11, at 2–4 (alterations added) (footnote omitted).)

The particularized complaint, which the Court received on March 6, 2026, names as defendants the Commonwealth of Virginia, the VDOC, SFCC, and SFCC Warden Garry Jones. It contains two sets of allegations related to one another only to the extent that each set of events occurred at SFCC. The first set of facts significantly overlaps with those raised, addressed, and settled in *Richardson I*. For instance, as he alleged in *Richardson I*, Richardson again alleges here that he lacks sufficient access to ASL interpreters in prison and that VDOC officials routinely fail

to upload memoranda and documents other inmates receive in paper form to his digital law library account. (ECF No. 20, at 2–6.) Richardson also faults VDOC officials for failing to provide him eyeglasses, another issue addressed in *Richardson I.* (*Id.* at 9.)

The second set of facts relates to Warden Jones's failure to provide him a diet consistent with his religious beliefs and appropriate for his medical conditions. (*See* ECF No. 20, at 6, 30–32.) As to the religious aspect of his claim, Richardson asserts that he "must eat in accordance with a Biblical imperative defined in Genesis 1:29," (*id.* at 6)—that is, one "consisting of whole fresh fruit . . . and herbaceous vegetables," (*id.* at 8). Moreover, Richardson's beliefs prohibit him from "contact[ing]" or "eating from utensils, trays, or any service ware that has ever contained, had contact with, or has been contaminated with [prohibited] items." (*Id.* at 29.) The Particularized Complaint does not, however, define what a "prohibited item" is.

From the medical perspective, Richardson alleges that he suffers from "an eating disability that causes choking, spitting, and requires [him] to consume no more than six to eight ounces of food every few hours." (*Id.* at 30.) He further claims to require milk at every meal "for digestion." (*Id.*) Warden Jones, however, has allegedly denied him such a diet. (*Id.*)

Based on these facts, the particularized complaint identifies the following claims:

| | |
|---|---|
| Claim One | "Discrimination based on a Disability in Violation of the Americans with Disabilities Act." (*Id.* at 11.) |
| Claim Two | "Discrimination based on a Disability in Violation of the Rehabilitation Act." (*Id.* at 16.) |
| Claim Three | "Violation of [Virginians with Disabilities Act]." (*Id.* at 21.) |
| Claim Four | "Title II, 28 [C.F.R.] § 35.152 Jails, detention and correctional facilities, and community correctional facilities and 28 C.F.R. § 35.130 General prohibitions against discrimination." (*Id.* at 22.) |
| Claim Five | "Freedom from Cruel and Unusual Punishment: Eighth and Fourteenth Amendments (42 U.S.C. § 1983)." (*Id.* at 24.) |

| | |
|---|---|
| Claim Six | "Violation of the United States Constitution Free Speech: First and Fourteenth Amendments (42 U.S.C. § 1983)." (*Id.* at 26.) |
| Claim Seven | "Violation of the Constitution of Virginia Freedom of Speech: Constitution of Virginia Article I, Section 12." (*Id.* at 27.) |
| Claim Eight | "Violation of the Constitution of Virginia Free Exercise of Religion: Constitution of Virginia Article I, Section 16." (*Id.* at 28.) |
| Claim Nine | "Violation of the United States Constitution Free Exercise of Religion: First and Fourteenth Amendments (42 U.S.C. § 1983)." (*Id.* at 29.) |
| Claim Ten | "Freedom from Cruel and Unusual Punishment: Eighth and Fourteenth Amendments (42 U.S.C. § 1983)." (*Id.* at 30.) |
| Claim Eleven | "Violation of the Religious Land Use and Institutionalized Persons Act of 2000 'Substantial Burden on Religious Exercise' (42 U.S.C. § 2000cc *et seq.*)." (*Id.* at 32.) |

Although the particularized complaint complies with the Court's September 18, 2025, Memorandum Order in that it sets forth these claims rather clearly, it otherwise largely fails to comply. First, the particularized complaint does not address the Court's observation that the claims raised in this action are duplicative of those raised, settled, and then readdressed through the motion to enforce in *Richardson I.*

The particularized complaint also fails to comply with the September 18, 2025, Memorandum Order by failing to allege the dates on which the events underlying Richardson's claims occurred. Indeed, despite the Court's clear instruction that he must "provide specific dates" and "present his facts in order by date," (ECF No. 11, at 3), Richardson offers a clear chronology with respect to *only* the VDOC's alleged failure to provide adequate access to ASL interpreters. (*See* ECF No. 20, at 4.) The rest of the thirty-page pleading is a rambling narrative, moored in time only by the vague assertion that the conduct described "began on September 30, 2024 and continue[s] to this day." (*See id.* at 2.)

## III. ANALYSIS

### A. Claims One through Seven are Barred by Res Judicata

The Court first finds that, by effect of the settlement agreement and Judge Colombell's October 3, 2025, Memorandum Opinion and Order, res judicata bars Claims One through Seven. Although res judicata is an affirmative defense, the Court may *sua sponte* determine whether it applies and bars Richardson's claims from review. *See Clodfelter v. Republic of Sudan*, 720 F.3d 199, 208 (4th Cir. 2013); *Scherer v. Equitable Life Assurance Soc'y*, 347 F.3d 394, 398 n. 4 (2d Cir. 2003) ("[A] court is free to raise th[e] defense [of res judicata] *sua sponte*.").

Traditionally, the doctrine of res judicata provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citation omitted). But "where a dismissal is 'based on a settlement agreement, . . . the principles of *res judicata* apply (in a somewhat modified form) to the matters specified in the settlement agreement, rather than the original complaint.'" *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 913 (4th Cir. 2013) (quoting *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004)). The intent of the parties determines whether a later suit is precluded by the settlement agreement. *Norfolk S. Corp.*, 371 F.3d at 1289–91.

Here, the parties' consent that only Judge Colombell could "resolve any disputes concerning th[e] Agreement" demonstrates their intent to avoid additional litigation. *Richardson I*, ECF No. 148, at 2; *see Hensley v. Alcon Laboratories, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002) ("[R]esolution of a motion to enforce a settlement agreement . . . may be accomplished within the context of the underlying litigation without the need for a new complaint."). Notably, the parties

agreed that "any resolution determined by Judge Colombell" as to any future dispute would be "conclusive." *Id.*

Having determined that the parties intended to preclude future litigation, the Court must determine the scope of the preclusion. *See Purdue Pharma*, 737 F.3d at 913 ("[T]he preclusive effect of a judgment based on [a settlement] agreement can be no greater than the preclusive effect of the agreement itself."). Although, as discussed above, Richardson raised a variety of claims in *Richardson I*, the settlement agreement executed in that action appears to have related only to the disability accommodations the VDOC would provide Richardson, not the religious liberty claims Richardson had also raised. *See Richardson I*, ECF No. 148 (summarizing the terms of the agreement). Richardson's motion to enforce limited its scope to the provision of disability accommodations. *See Richardson I*, ECF Nos. 136, 137, 149. Accordingly, res judicata does not bar the religious liberty and dietary claims Richardson brings in this action, but his disability accommodation claims, to the extent they overlap with the claims and allegations set forth in the Motion to Enforce in *Richardson I*, are barred.

By the Court's estimation, the particularized complaint in this action describes only three incidents that post-date the motion to enforce filed in *Richardson I*. (*See* ECF No. 20, at 4 (alleging lack of access to interpreters on July 18, 2025; November 3, 2025; and January 20, 2026).) The particularized complaint otherwise fails to state the specific dates on which alleged violations occurred, but review of its contents reveals significant overlap between it and the motion to enforce. In each, as already discussed, Richardson alleges that he lacked sufficient access to ASL interpreters at SFCC, that VDOC officials routinely failed to upload memoranda and documents other inmates receive in paper form to his digital law library account, and that VDOC officials have failed to provide him eyeglasses.

Consistent with the above, the Court concludes that res judicata applies and bars Claims One, Two, Three, Four, Five, Six, and Seven because these claims are identical to, or at the very least substantially overlap with, the issues contemplated in the settlement agreement, raised in the Motion to Enforce, and addressed by Judge Colombell in his October 3, 2025, decision. *See Clear Touch Interactive, Inc. v. Ockers Co.*, 171 F.4th 715, 725–28 (4th Cir. 2026) (finding state court order enforcing settlement agreement precluded claims later raised in federal court). To the extent Richardson alleges that additional incidents occurred following his filing of the Motion to Enforce and the issuance of the October 3, 2025, decision, Richardson is not without recourse. As noted above, "resolution of a motion to enforce a settlement agreement . . . may be accomplished within the context of the underlying litigation without the need for a new complaint." *Hensley*, 277 F.3d at 540. In other words, Richardson may again move to enforce the settlement agreement in *Richardson I*, as contemplated in the agreement. Accordingly, Claims One, Two, Three, Four, Five, Six, and Seven are barred by res judicata and DISMISSED WITHOUT PREJUDICE to Richardson's ability to seek enforcement of the settlement agreement in *Richardson I.*

### B. Claims Eight through Eleven

The Court next addresses Claims Eight through Eleven, in which Richardson broadly asserts that the defendants have failed to provide him a diet consistent with his religious beliefs and appropriate for his medical conditions. (*See* ECF No. 20, at 6, 30–32.)

Although these claims are not barred by res judicata, they suffer from other defects. First, despite this Court's clear instructions, Richardson again failed to allege specific dates on which the events underlying his claims occurred. Not only does this contravene the Court's instructions, but it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also, e.g.*, *Davis v. CDCR*, No. 1:21-cv-01769-JLT-HBK

(PC), 2023 WL 12090761, at *3 (E.D. Cal. Aug. 16, 2023) ("Because the Complaint does not contain a date on when the alleged events occurred, Defendants do not have fair notice to respond to the Complaint.").

Moreover, Richardson brings First, Eighth, and Fourteenth Amendment claims under § 1983, and neither the Commonwealth of Virginia, VDOC, nor SFCC are "persons" subject to suit under that statute. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) (explaining that neither "states nor governmental entities that are considered arms of the state" are persons within the meaning of § 1983). If this were not enough, each claim independently lacks sufficient factual allegations to state a claim for relief or raises a matter of state law over which the Court will decline to assume supplemental jurisdiction.

**1. Claims Nine and Eleven**

In Claims Nine and Eleven, Richardson asserts that the defendants violated his rights under the First Amendment's Free Exercise Clause and RLUIPA, respectively, by failing to provide him a diet consistent with his religious beliefs.[4] (ECF No. 20, at 29–30, 32–33.) He specifically asserts that he "must eat in accordance with a Biblical imperative defined in Genesis 1:29," (*id.* at 6)—that is, one "consisting of whole fresh fruit . . . and herbaceous vegetables," (*id.* at 8)—but is prohibited from "contact[ing]" or "eating from utensils, trays, or any service ware that has ever contained, had contact with, or has been contaminated with [prohibited] items" (*id.* at 29).

---

[4] In Claim Nine, Richardson also asserts that the defendants violated his rights under the Fourteenth Amendment. (ECF No. 20, at 29–30.) To the extent Richardson invokes the Fourteenth Amendment in an effort to raise a substantive due process claim, he may not do so because the First Amendment is a "more-specific provision" governing his claim. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998); *see Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion of Rehnquist, C.J.) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (internal quotation marks omitted)) .

To state a claim under the Free Exercise Clause of the First Amendment, a complaint must allege facts that reflect "(1) that he holds a sincere belief that is religious in nature" and (2) that the relevant defendant imposed a substantial burden on the practice of his religion. *Whitehouse v. Johnson*, No. 1:10cv1175 (CMH/JFA), 2011 WL 5843622, at *4 (E.D. Va. Nov. 18, 2011) (citing *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989)).

RLUIPA, meanwhile, provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a).

"Government officials impose a substantial burden on the free exercise of religion by 'put[ting] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Massenburg v. Adams*, No. 3:08cv106, 2011 WL 1740150, at *4 (E.D. Va. May 5, 2011) (quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)) (alteration in original) (some internal quotation marks omitted). They do not do so merely by making one's ability to exercise their religion more inconvenient. *See Dorman v. Aronofsky*, 36 F.4th 1306, 1314 (11th Cir. 2022) ("[A] substantial burden is more than an inconvenience and is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." (internal quotation marks, alteration, and citation omitted)); *Stephens v. Byrd*, No. 7:18CV00172, 2019 WL 4345378, at *6 (W.D. Va. Sept. 12, 2019) ("Mere inconvenience and minor expense cannot constitute a substantial burden for purposes of a First Amendment claim." (citation omitted)).

Here, Richardson has not identified or described the nature of his religious beliefs, much less alleged that any defendant has imposed a substantial burden on his ability to exercise them. Although the particularized complaint states that there are foods Richardson may eat and foods he is prohibited from eating, the pleading does not actually identify what foods Richardson is permitted to eat; it merely cites a Biblical passage. Nor does the pleading identify the food Richardson has actually been provided or describe the manner in which his food is served and what measures he has had to take in order to ensure adequate nutrition. When viewed in conjunction with Claim Ten, in which Richardson alleges that he, for medical reasons, should receive *less food* during meal-service times, one can infer that Richardson consistently receives at least some acceptable food in an acceptable manner and has not been forced to "modify his behavior and to violate his [religious] beliefs" with respect to his diet. *See Massenburg*, 2011 WL 1740150, at *4. Accordingly, the particularized complaint fails to identify a substantial burden resulting from the diet Richardson receives at SFCC. Because the imposition of a substantial burden is a required element of claims under both the First Amendment and RLUIPA, Richardson's failure to allege facts in support of that element dooms both claims. Claims Nine and Eleven will therefore be DISMISSED without prejudice for failure to state a claim.

**2. Claim Ten**

In Claim Ten, Richardson seeks relief under the Eighth Amendment, asserting that that he suffers from "an eating disability that causes choking, spitting, and requires [him] to consume no more than six to eight ounces of food every few hours."[5] (ECF No. 20, at 30.) He further claims

[5] Richardson also seeks relief under the Fourteenth Amendment, but, once more, the "more-specific provision" of the Eighth Amendment governs this claim. *See Cnty. of Sacramento*, 523 U.S. at 844; *Albright*, 510 U.S. at 273 (plurality opinion of Rehnquist, C.J).

to require milk at every meal "for digestion." (*Id.*) Defendants' failure to provide him a suitable diet, he alleges, violates his rights. (*Id.* at 30–32.)

To state an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)). "What must be [alleged] with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

When an inmate challenges his conditions of confinement, he must allege "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (internal citation omitted) (citing *Wilson*, 501 U.S. at 301–03). Deliberate indifference requires the plaintiff to allege facts suggesting that a particular defendant actually knew of and disregarded a substantial risk of serious harm to the plaintiff's person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be

> aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

Richardson fails to offer adequate factual allegations to state an Eighth Amendment claim. Even assuming that Richardson's claim that he suffers from an "eating disability" satisfies the objective prong, (ECF No. 20, at 30), he fails to adequately plead the subjective element. For instance, Richardson claims that Warden Jones was aware of his disability and that he had been "recommended" a specific diet "by specialist[s]." (*See* ECF No. 20, at 8.) But as with all of his claims, Richardson offers no allegations regarding the timeline underpinning this claim. He does not say when he received any dietary diagnosis, when or how Warden Jones learned of that medical opinion, or at what times the warden denied Richardson his recommended diet. Once more, then, Richardson fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Accordingly, Claim Ten will be DISMISSED WITHOUT PREJUDICE for failure to state a claim.

### 3. Claim Eight

Finally, in Claim Eight, Richardson asserts that Defendants have violated Article I, Section 16 of the Virginia Constitution by failing to "provide a diet and means for [him] to [exercise his] sincerely held religious beliefs at the State Farm facility." (EF No. 20, at 28.) "The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away." *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995). "Although a federal court has discretion to assert pendent jurisdiction over state claims even when no federal claims remain certainly if the federal claims are dismissed before trial . . . the state claims should be dismissed without prejudice." *Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Hous. Auth.*, 11 F. App'x 283, 287 (4th Cir. 2001) (citations, alterations, and internal quotation marks omitted). Here, having dismissed all of Richardson's federal claims, the Court declines to exercise supplemental jurisdiction over this state law claim. Accordingly, Claim Eight will be DISMISSED WITHOUT PREJUDICE.

## IV. CONCLUSION

Claims One, Two, Three, Four, Five, Six, and Seven are barred by res judicata and will be DISMISSED WITHOUT PREJUDICE. Claims Nine, Ten, and Eleven will be DISMISSED WITHOUT PREJUDICE for failure to state a claim and for failure to comply with the Court's September 18, 2025, Memorandum Order. Claim Eight will be DISMISSED WITHOUT PREJUDICE because the Court declines to exercise supplemental jurisdiction over that state-law claim. The action, therefore, will be DISMISSED.

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 17 August 2026
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge